Argued and submitted October 16, 2019, reversed and remanded January 13, petition for review denied May 6, 2021 (368 Or 138)

Schearon STEWART
and Jason Stewart,
individually and on behalf of
all similarly-situated persons,
*Plaintiffs-Appellants,*

*v.*

ALBERTSON'S, INC.,
*Defendant,*

*and*

ALBERTSON'S COMPANIES LLC,
a foreign limited liability company;
Albertson's LLC, a foreign corporation;
and Safeway, Inc.,
a foreign business corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
16CV15125; A166857

481 P3d 978

Plaintiffs, who purchased meat from defendants' supermarkets on a "buy one get one free" basis, brought class-action claims for damages. They alleged that defendants inflated the regular purchase price of the meat during those promotions, thereby violating the Unlawful Trade Practices Act (UTPA). Defendants conceded that they had inflated some prices during their promotions and offered a remedy as an alternative to litigation under ORCP 32 I, a class-action procedure unique to Oregon. Over plaintiffs' objection, the trial court agreed with defendants that the proposed remedy was "appropriate" within the meaning of ORCP 32 I, and it granted their motion to dismiss the damages claims. Plaintiffs appeal the limited judgment on those claims, arguing that (1) defendants' attempt to cure under ORCP 32 I was untimely because it occurred after the damages claims had been filed; (2) the trial court impermissibly engaged in judicial fact-finding when considering defendants' motion; and (3) in any event, the limited damages offered by defendants were not "appropriate" compensation within the meaning of that rule. *Held*: Defendants' motion was timely, and the trial court followed the correct procedure: It considered the pleadings, took evidence on the nature and extent of the harm and defendants' proposed cure, then made the determinations under ORCP 32 I. However, because class members are legally entitled to statutory damages for knowing or reckless violations of the UTPA, the trial court erred in concluding that the proposed cure was "appropriate" notwithstanding the absence of those damages.

Reversed and remanded.

Jerry B. Hodson, Judge.

Travis Eiva argued the cause for appellants. Also on the briefs were David F. Sugarman and Tim Quenelle.

Andrew Escobar, Washington, argued the cause for respondents. Also on the brief were Austin Rainwater and DLA Piper LLP, Washington.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

This appeal presents questions of first impression concerning a class-action procedure unique to Oregon: the so-called "notice and cure" process under ORCP 32 H and I. Plaintiffs are consumers who purchased meat from defendants' supermarkets on a "buy one get one free" basis. They brought class-action claims for damages alleging that, during those promotions, defendants inflated the regular purchase price of the meat in order to pass along the cost of the supposedly "free" items to the consumers, thereby violating the Unlawful Trade Practices Act (UTPA). In response, defendants conceded that they had inflated some prices during their promotions and offered a remedy as an alternative to litigation under ORCP 32 I. Defendants' proposed remedy, however, calculated the class size and resulting damages differently from plaintiffs' allegations.

Over plaintiffs' objection, the trial court agreed with defendants that the proposed remedy was "appropriate" within the meaning of ORCP 32 I, and it granted their motion to dismiss the damages claims. Plaintiffs now appeal the limited judgment on those claims, arguing that (1) defendants' attempt to cure under ORCP 32 I was untimely because it occurred after the damages claims had been filed; (2) the trial court impermissibly engaged in judicial factfinding when considering defendants' motion; and (3) in any event, the limited damages offered by defendants were not "appropriate" compensation within the meaning of that rule. We conclude that defendants' motion under ORCP 32 I was timely and that the trial court largely followed the correct procedure for considering it. However, the court erred in ruling that the remedy offered by defendants, which omitted statutory damages, was "appropriate" within the meaning of the rule. We therefore reverse and remand.

## I.   BACKGROUND

As we will discuss later, the parties disagree about the standard of review that applies to the trial court's ruling—including whether the court was permitted to engage in any factfinding when considering defendants' motion to dismiss. At this point, a summary of the procedural history of the case is sufficient to frame the issues on appeal.

A.  *The Pleadings*

1.  *Initial complaint*

Plaintiff Schearon Stewart is an Oregon resident who shopped at a Safeway store in Sherwood, and plaintiff Jason Stewart (no relation to Schearon) is an Oregon resident who shopped at a Safeway store in Tigard; both of them bought chicken shortly before filing this action. In early May 2016, plaintiffs filed a complaint, on behalf of themselves and all other similarly situated persons, alleging claims about meat-sale practices against defendants Albertsons's Companies, LLC, and Safeway, Inc. (collectively, Safeway).[1] The complaint was based on Safeway's "buy one, get one free" or "buy one, get two or get three free" (BOGO) promotions involving the sale of meat.

Plaintiffs' complaint alleged as follows. Safeway's BOGO promotions were available exclusively to customers who were part of Safeway's "Club Card" loyalty program. During BOGO promotions, Safeway inflated the per-pound prices for meat beyond their Club Card prices. In some instances, Safeway changed the names or added de minimis services like seasoning or cutting that typically would have been free to Club Card members. So, for example, "pork loin chops" were sold to Club Card members at a price of $4.49 per pound outside of the BOGO promotions, but essentially the same product was sold as seasoned "pork chops boneless" during a BOGO promotion at a price of $12.99 per pound. Plaintiffs' complaint identified the following products that were priced differently during BOGO promotions in March 2016:

| Item | Non-BOGO Price | BOGO Price |
|---|---|---|
| USDA Choice Beef Eye of Round Steak | $6.99/lb | $12.99/lb (thin) |
| Beef Bottom Round Steak | $4.99/lb | $14.99/lb (seasoned) |
| Chicken Breast Skinless/ Boneless | $1.88/lb; $2.29/lb | $ 9.99/lb (seasoned) |
| Pork Chops Boneless | $4.49/lb | $12.99/lb (seasoned) |
| USDA Choice Beef Petite Sirloin | $3.97/lb | $16.99/lb (seasoned); $12.99/lb (unseasoned) |

---

[1] Plaintiffs alleged that the companies were related.

According to plaintiffs, the BOGO promotions violated ORS 646.608(1)(j) (providing that it is an unlawful practice to make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions"), and ORS 646.608(1)(s) (providing that it is an unlawful trade practice to make "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services"). Plaintiffs also alleged that the BOGO promotions violated OAR 137-020-0015, a rule promulgated by the Attorney General to implement ORS 646.608 that regulates the deceptive use of "free" offers. *See* ORS 646.608(1)(u) (making it an unlawful trade practice to engage "in any other unfair or deceptive conduct in trade or commerce"); ORS 646.608(4) ("An action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce.").

Plaintiffs' complaint alleged a single claim for relief based on the alleged violations of ORS 646.608 and OAR 137-020-0015, and it included two counts within that claim. The first count alleged that Safeway had willfully violated ORS 646.608 through the BOGO promotions and that, as a result, "[p]laintiffs and members of the class suffered ascertainable losses, in that they paid more for meat, they did not receive free meat, and they bought more meat than they otherwise would have purchased without the deceptive designation of 'free' product."

The second count realleged previous allegations and further alleged that Safeway had engaged in the conduct in reckless disregard or with knowledge of the fact that that its practices violated ORS 646.608(1) and OAR 137-020-0015.[2] Those additional allegations tracked ORS 646.638 (8)(a), which authorizes the recovery of statutory damages of $200 on behalf of class members only if "the plaintiffs in the action establish that the members have sustained an

---

[2] As discussed later, 308 Or App at 489-90, the UTPA provides that "[a] willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation," ORS 646.605(10), which the Supreme Court held does not require knowing or reckless conduct.

ascertainable loss of money or property as a result of a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608."

## 2. *ORCP 32 H and the claims for damages*

Despite alleging that members of the class had suffered ascertainable losses, plaintiffs' initial complaint sought only injunctive relief—a tactical decision based on a quirk of Oregon's class-action procedure. Under ORCP 32 H, a class action for damages cannot be maintained until thirty days after a plaintiff has "[n]otif[ied] the potential defendant of the particular alleged cause of action," ORCP 32 H(1)(a), and "[d]emand[ed] that such person correct or rectify the alleged wrong," ORCP 32 H(1)(b). Plaintiffs relied on service of their initial complaint to provide the requisite notice, informing Safeway that, "[u]nless [they] comply with ORCP 32 I[, the 'cure' provision], Plaintiffs will amend the complaint to add claims for actual damages under the first count and statutory damages under the second count."

In July 2016, plaintiffs amended their complaint to add requests for damages. On the first count, plaintiffs sought "actual damages, prejudgment interest, and attorney fees and costs"; on the second, plaintiffs sought "statutory damages of $200 per consumer, prejudgment interest, and attorney fees and costs."

## B. *ORCP 32 I Motion Practice*

In early December 2016, approximately seven months after receiving notice under ORCP 32 H, Safeway moved to dismiss the plaintiffs' damages claims pursuant to the cure provision, ORCP 32 I, on the ground that it was offering "the appropriate compensation, correction, or remedy of the alleged wrong" under that rule. For purposes of the motion, Safeway conceded that it had inflated regular prices of some items during promotions, but it disputed whether plaintiffs could establish ascertainable loss as a result of the price inflation for most of the price increases. Safeway took the position that, so long as the price per pound of all meat received—including the "free" meat—ended up below the regular price per pound for a comparable product, then the customer had still received a bargain

and suffered no ascertainable loss.[3] It identified only four products (the cure products[4]) where customers suffered an ascertainable loss, where "the total cost to purchase was higher than the total price to purchase the same quantity of the allegedly 'comparable' non-[BOGO] meat." As for those four products, Safeway represented that it would identify, to the extent possible, all purchases during the class period and notify the purchasers that they would receive "a unique, instore credit certificate for the delta between the total price of all Cure Product(s) that the customer purchased during the class period and the price for which the customer could have purchased the equivalent amount of 'comparable' non-[BOGO] meat during that period."[5] Safeway supported its motion to dismiss with a declaration from one of its meat sales managers, along with attached exhibits showing meat product sales during the class period.

Plaintiffs opposed the motion to dismiss on multiple grounds, including that (1) the proposed cure was untimely because it was not offered during the 30-day notice period and would not be provided to potential class members until nine months from the date of notice; (2) contrary to the process contemplated by ORCP 32 I, Safeway's motion would require the court "to determine disputed issues of fact and law without a record"—a problem exacerbated by Safeway's

---

[3] Safeway provided the following example:

"For example, from May 4, 2015 through May 2, 2016, pre-seasoned and pre-packaged Seasoned Petite Beef Sirloin was offered at a price of $13.99 per pound on a BOGO basis, which meant that a customer could pay $13.99 for two pounds of steak. During the same time period, the allegedly 'comparable' BOGO product—non-seasoned and nonprepackaged Choice Petite Beef Sirloin Steak—was offered at a price of $7.99 per pound, which meant that a customer would need to pay $15.98 for two pounds of steak. Anyone who purchased the pre-seasoned and prepackaged Seasoned Petite Beef Sirloin on BOGO thus realized a net savings of $1.99. Just as with this example, the price per pound paid by consumers for the meat they received was less for the overwhelming majority of the [BOGO] products sold than the products which Plaintiffs argue were the 'same.'"

(Internal citations omitted.)

[4] Safeway identified "(a) Choice Thin-Sliced Beef Chuck Mock Tender Steak; (b) Seasoned Boneless Chicken Breast; (c) Seasoned Chicken Leg Quarters; and (d) Breaded Pork Cutlet."

[5] The credit certificate, which would not expire, could be printed and redeemed at any Safeway store in Oregon and credited toward any in-store purchase.

refusal to provide discovery; and (3) the proposed remedy was incomplete because it used the wrong methodology for determining out-of-pocket loss, omitted statutory damages, failed to include prejudgment interest and attorney fees, and gave store credit rather than cash.

In a letter opinion, the court expressed its willingness to grant Safeway's motion, but only if Safeway modified aspects of its proposed cure. In relevant part, the court explained:

"I agree with defendants' method of calculating damages: the difference between the price paid by class members for the product purchased and the actual value of that product.

"I agree with plaintiffs that in-store coupons are inadequate compensation. Defendants must offer cash, so that class members are free to spend their money wherever they wish.

"Appropriate compensation in this case must include the payment of prejudgment interest and attorney fees, but not the payment of statutory damages."

(Bullet points omitted.) The court also ordered Safeway to provide additional discovery to allow plaintiffs to evaluate Safeway's damages calculation, and it invited supplemental briefing from the parties on its conditional ruling.

In its supplemental briefing, Safeway accepted the court's conditions and offered to cure on the revised basis. Plaintiffs, on the other hand, reiterated their objections based on the timing of the cure, defendants' method of calculating actual damages, and the absence of statutory damages. After another hearing, and over those objections, the court granted Safeway's motion and entered a limited judgment dismissing the damages claims. The limited judgment stated that payment by Safeway to class members "shall be made by check and shall be calculated as the difference between the (a) price of the Cure Product(s) that the customer purchased during the class period and (b) price for which the customer could have purchased the equivalent amount of 'comparable' non-[BOGO] meat during that period, and shall include interest calculated at 9 percent per

annum from the date of purchase(s) through the date of this Order." Plaintiffs appealed from that limited judgment.

## II.  DISCUSSION

On appeal, plaintiffs argue that the trial court erred in granting Safeway's ORCP 32 I motion because it was procedurally and substantively flawed for the reasons it advanced below: (1) it was untimely; (2) it required the court to impermissibly resort to judicial-factfinding; and (3) in any event, the proposed cure was inadequate and therefore not "the appropriate compensation" as a matter of law. We address each of those questions in turn.

A.  *Timeliness*

Plaintiffs urged the trial court to reject Safeway's proposed cure because it was not made during the 30-day notice period prescribed in ORCP 32 H. The trial court rejected that argument on the ground that ORCP 32 I did not include a limitation tying the cure to the notice period. On appeal, plaintiffs again argue that an offer to cure must be made during the 30-day notice period under ORCP 32 H. They concede that, "[p]otentially, the rule allows for some additional post-filing time to effect the cure," but they argue that the rule "does not allow for what defendants did here. That is, it does not allow for defendants to litigate the damages claim for six months and then file an ORCP 32 I motion in the middle of the dispute and for the court to grant the motion more than a year after the ORCP 32 H notice was provided." For the reasons that follow, we agree with the trial court: ORCP 32 I does not include a 30-day or prelitigation timing requirement for a cure, and it is not the role of the courts to insert one.

We review the trial court's construction of ORCP 32 I for errors of law, looking to the text and context of the rule and evidence of the intent of the Council on Court Procedures that promulgated it in 1978.[6] *A.G. v. Guitron*,

---

[6] ORCP 32 I was initially numbered as ORCP 32 J and became effective in 1979. It has not been amended in substance by the legislature, so the pertinent history concerns the council's intent. *Guitron*, 351 at 479-80 & n 13 ("We use [the council's] legislative history as we would use comparable history from the Oregon Legislature.").

351 Or 465, 479, 268 P3d 589 (2011); *see also Mathis v. St. Helens Auto Center, Inc.*, 367 Or 437, 447-48 & n 7, 478 P3d 946 (2020) (describing the methodology for construing ORCP provisions).

The text of ORCP 32 I provides:

"No action for damages may be maintained under the provisions of sections A and B of this rule upon a showing by a defendant that all of the following exist:

"I(1)  All potential class members similarly situated have been identified, or a reasonable effort to identify such other people has been made;

"I(2)  All potential class members so identified have been notified that upon their request the defendant will make the appropriate compensation, correction, or remedy of the alleged wrong;

"I(3)  Such compensation, correction, or remedy has been, or, in a reasonable time, will be, given; and

"I(4)  Such person has ceased from engaging in, or if immediate cessation is impossible or unreasonably expensive under the circumstances, such person will, within a reasonable time, cease to engage in such methods, acts, or practices alleged to be violative of the rights of potential class members."

Nowhere in that provision is there an explicit reference to when an offer to cure must be made or, for that matter, when "all of the following" criteria in the rule must "exist." The only references to timing are to *what* must be shown by a defendant: that the compensation, correction, or remedy "has been, or, in a reasonable time, will be, given," ORCP 32 I(3), and that the person has ceased from engaging in the practices or "will, within a reasonable time," cease to engage in them, ORCP 32 I(4).[7]

Nevertheless, plaintiffs argue that certain textual, contextual, and historical clues suggest that ORCP 32 I was

---

[7] In the trial court, plaintiffs argued that, "even if the Court concludes that there is no firm time limit, the delay here is not reasonable under any circumstances" and that the court "[f]or that reason alone" should deny the motion. The trial court separately addressed the issue of reasonableness under the totality of the circumstances of the litigation, and we do not understand plaintiffs' timeliness arguments on appeal to include a challenge to that determination.

intended to address *prelitigation* efforts to cure. Specifically, they point to references in ORCP 32 I to "alleged" wrongs and "potential" class members, the related 30-day notice period in ORCP 32 H before an action is filed, and legislative history reflecting a desire to give defendants an opportunity to avoid the negative publicity of lawsuits. *E.g.*, Exhibit A, Senate Committee on the Judiciary, SB 163, 1973 (memorandum of Henry Carey in support of the bill, stating that it would "require[] that a defendant be allowed 30 days to correct any wrongdoing before an action can be filed").[8] Viewed together, plaintiffs argue that those indicators evidence the drafters' intent that any offer to cure under ORCP 32 I must have been made before the litigation commenced, or else it would be entirely duplicative of a procedural option that a defendant always has—to just admit the allegations after the case is filed.

We disagree with plaintiffs' reading of the rule. First, neither "alleged wrong" nor "potential class member" in ORCP 32 I is plausibly understood to refer exclusively to prelitigation conduct or a prelitigation status. The showing contemplated by ORCP 32 I is made after the litigation has commenced—by a "defendant" seeking to show that the damages claims cannot be "maintained." And yet a defendant can satisfy ORCP 32 I(4) by showing that the person "will, *within a reasonable time*, cease to engage in such methods, acts, or practices *alleged* to be violative of the rights of *potential* class members." (Emphases added.) So, even though "potential" and "alleged" are used in ORCP 32 H in reference to the period before litigation, the rule's drafters did not use the terms exclusively that way, since acts or practices can remain "alleged" and class members "potential" under ORCP 32 I(4) even after the damages action has been filed.[9]

_____

[8] The parties rely heavily on statements made before legislative committees during the passage of Senate Bill 163, a predecessor to ORCP 32 that included text that was repealed but then readopted by the Council on Court Procedures as ORCP 32 H and I. Assuming that committee discussions from 1973 inform our analysis, as discussed later, the history cited by the parties from 1973 is, at most, inconclusive.

[9] That comports with the class-certification process generally, in which the contours of the class and the issues to be certified for class treatment remain fluid after the class representative files a complaint. *See* ORCP 32 C ("As soon as practicable after the commencement of an action brought as a class action, the

Second, we are not persuaded that ORCP 32 I, if interpreted to allow post-litigation offers, is merely redundant of a defendant's option to admit all of a plaintiff's allegations. The premise of that argument is that ORCP 32 I involves no judicial factfinding or discretion and is based solely on the legal effect of the pleadings. We reject that premise. As we explain more fully later, the cure process contemplated by ORCP 32 I involves factfinding and discretion by the trial court and is not the same legal process as a defendant admitting all of the plaintiff's allegations.

Third, the legislative history proffered by plaintiffs is, at most, inconclusive. Even assuming that the history reflects an intention to give potential defendants an opportunity to cure the alleged wrong and avoid the negative publicity of an action before it was filed, plaintiffs have not directed us to anything that conclusively demonstrates that the drafters intended that opportunity to end once the litigation commenced, let alone anything that convinces us that the text of ORCP 32 I is ambiguous in that respect.

In sum, plaintiffs have not offered a persuasive argument to overcome the glaring textual omission of any requirement that the "showing" under ORCP 32 I be of a prelitigation offer or that the requirements set out in ORCP 32 I "exist" before the damages claims have been filed. It is not our role to write into the rule what has been omitted. *See McLaughlin v. Wilson*, 365 Or 535, 548, 449 P3d 492 (2019) (so holding); ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted."). We therefore reject plaintiffs' argument that the trial court was required to deny Safeway's motion to dismiss as untimely.

court shall determine by order whether and with respect to what claims or issues it is to be so maintained and shall find the facts specially and state separately its conclusions thereon. An order under this section may be conditional, and may be altered or amended before the decision on the merits."); ORCP 32 F ("When ordering that an action be maintained as a class action under this rule, the court shall direct that notice be given to some or all members of the class under subsection E(2) of this rule, shall determine when and how this notice should be given and shall determine whether, when, how, and under what conditions putative members may elect to be excluded from the class.").

B.   *"The Appropriate Compensation"*

Plaintiffs' remaining arguments are directed at the requirement in ORCP 32 I that Safeway's offer include "the appropriate compensation, correction, or remedy of the alleged wrong." We begin with their disagreement about the nature of the ORCP 32 I process and, relatedly, our standard of review, which flows from the trial court's role in that process.

1.   *Legal standard/standard of review*

As noted at the outset, ORCP 32 I is a unique procedural vehicle that has never been interpreted by our appellate courts, and the parties presented the trial court with very different views of how the rule was intended to operate. Safeway's motion to dismiss asked the court to evaluate the question of "the appropriate compensation, correction, or remedy" by, among other things, determining the legally correct methodology for calculating class-wide damages, deciding Safeway's "regular price" for certain items, and rejecting plaintiffs' allegations about statutory damages, both because plaintiffs had not produced evidence of conduct giving rise to statutory damages and because those damages are punitive rather than remedial for purposes of ORCP 32.

Plaintiffs responded that ORCP 32 I "is not a process for the Court to decide disputed issues of fact. Nor is it a means for the defendants to impose upon plaintiffs and the proposed class anything less than a full and complete remedy"—which, according to plaintiffs, meant that they must receive their out-of-pocket losses or statutory damages of $200, whichever is greater.

At the first hearing on Safeway's motion, the trial court explained that what it was "struggling with is what I am supposed to do as a judge and not the ultimate trier of fact under this provision at this stage in the proceeding." The court observed that it was unclear what, if any, preliminary factfinding was involved under ORCP 32 I and that "[t]he rule doesn't really tell us how I'm supposed to make the decision about whether or not there is appropriate compensation. It does say, 'Upon a showing.' It doesn't say what

that showing is supposed to be by the defendant. It doesn't say anything about what the plaintiff is supposed to do."

The trial court's ruling that the offer included "the appropriate compensation" ultimately rested on determinations that (1) Safeway's methodology for determining ascertainable loss was correct for the type of class claims that plaintiffs were pursuing; (2) that Safeway's exhibits reflected the correct "regular prices" for employing that methodology; and (3) that statutory damages did not need to be included in order for the remedy to satisfy ORCP 32 I.[10]

On appeal, the parties continue to disagree about the nature of a ruling under ORCP 32 I. Plaintiffs assert that an ORCP 32 I motion is decided "just like any pleading motion," in which the trial court must look to the pleadings, assume the truth of any well-pleaded facts, and then decide whether the proposed cure is sufficient to meet those allegations. In plaintiffs' view, that determination is one of law, which we review on appeal for errors of law.

Safeway, on the other hand, argues that a determination under ORCP 32 I involves a discretionary decision by the trial court. It contends that the rule's use of the term "showing" necessarily requires something beyond the pleadings, that trial court decisions under ORCP 32 are generally reviewed for abuse of discretion (including settlements, which Safeway describes as "highly analogous" to ORCP 32 I), and that the rule's use of the term "appropriate" is one that confirms that the approval of the remedy is within the discretion of the trial court.

To determine our standard of review for a ruling under ORCP 32 I, we must first determine what that provision demands of a trial court. To that end, we begin with a brief overview of the class-certification process under ORCP 32 because that overall process provides context for ORCP 32 I, and necessarily informs our understanding of it.

---

[10] During the hearing, the court recognized that, because Safeway was acknowledging that at least some plaintiffs suffered ascertainable loss, the "question for statutory damages is was it reckless or knowing, which I don't have any record, right? And so if I were to make a decision on the record I have, I think it would be in favor of the defense, frankly, but that's just because of the record I have."

Under ORCP 32 A, members of a class "may sue or be sued as representative parties on behalf of all" only if certain requirements are satisfied. The first five prerequisites, set out in ORCP 32 A, are shorthanded as numerosity, commonality, typicality, adequacy, and notice. If any one of the five requirements is not satisfied, the case cannot go forward as a class action. But if all five are satisfied, a second inquiry comes into play: whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." ORCP 32 B.

The requirements in ORCP 32 A and B do not involve "a mere exercise in pleading" but impose an affirmative burden on a plaintiff to demonstrate that the requirements are satisfied. *Pearson v. Philip Morris, Inc.*, 358 Or 88, 107, 361 P3d 3 (2015) (citing *Bernard v. First Nat'l Bank*, 275 Or 145, 153, 550 P2d 1203 (1976)). Consequently, a trial court must make an affirmative determination that the rule's requirements for class certification are satisfied before an action can be maintained on behalf of a class. *Pearson*, 358 Or at 107.

The Supreme Court has explained that, "[a]lthough a class certification decision is not a trial of the merits, the issues that must be resolved for the class certification determination frequently overlap with the merits of a plaintiffs' class claim." *Id.* at 107-08 (citations omitted). Certification is, to some degree, a predictive exercise about how class issues will play out at trial, so "a trial court must 'probe behind the pleadings' to the extent necessary to resolve the class claims." *Id.* (quoting *General Telephone Co. v. Falcon*, 457 US 147, 160, 102 S Ct 2364, 72 L Ed 2d 740 (1982)). To the extent that a class certification decision could come out different ways, depending on how factual disputes are resolved, "the trial court must resolve the dispute *for the limited purpose of the class certification decision.*" *Pearson*, 358 Or at 108 (emphasis added). That is, the rulings about whether to maintain a class action have no preclusive effect with regard to the merits of individual claims but only determine whether the claims can be maintained on a class basis. *Id.* (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 NYU L Rev 97, 100, 114

(2009), for the proposition that the trial court must resolve factual disputes, even if they go to merits of dispute, with no issue preclusive effect, if disputes bear on whether class certification standards are satisfied). Where the parties "have competing views of the law that governs the class claim, a court must 'stand ready to say what the law is' to the extent that class determination will come out differently depending on which view is correct." *Id.* (quoting Nagareda, 84 NYU L Rev at 164, and citing *Tardiff v. Knox County*, 365 F3d 1, 4-5 (1st Cir 2004) (court must test disputed legal premises of claim at class certification stage if class action would be proper on one premise but not another)).

The cure provision, like the certification provisions, refers to when a class action may be "maintained." ORCP 32 I. But the ultimate decision under ORCP 32 I is not perfectly analogous to the certification decisions on which Safeway relies for an abuse of discretion standard. Whereas the provisions in ORCP 32 B (class certification) and G (regarding issue certification) commit the ultimate decision to the discretion of the trial court by using "may be" maintained in the permissive sense, ORCP 32 uses the term "may" as part of a restriction: "No action for damages may be maintained *** upon a showing by a defendant ***." ORCP 32 I. Not only is the burden on the other party—the defendant rather than the plaintiff—but ORCP 32 I requires dismissal upon the required showing. In other words, the court has no discretion if the criteria are satisfied; it must dismiss the action for damages.

Nonetheless, we agree with Safeway that the analogy to other ORCP 32 determinations is helpful in determining how to review the court's subsidiary determinations about the criteria in ORCP 32 I. As the trial court observed, the terms of ORCP 32 I do not say much about what a "showing" under the rule entails. But they say a little. The rule's use of the term "showing" indicates that something beyond the pleadings is necessary—specifically, "proof or prima facie proof of a matter of fact or law." *Webster's Third New Int'l Dictionary* 2106 (unabridged ed 1986); *see Arlington Sch. Dist. No. 3 v. Arlington Ed. Assoc.*, 184 Or App 97, 102, 55 P3d 546 (2002) (employing that dictionary definition in

concluding that a "'showing' in its ordinary legal sense, is 'proof or prima facie proof of a matter of fact or law'"); *Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 492-93, 992 P2d 434 (1999) (adopting the dictionary definition as the meaning of "showing" for purposes of ORS 183.480(3)). Considering who has the burden and the stakes involved under ORCP 32 I—a showing by the defendant that results in dismissal of a plaintiff's damages claim—the most plausible reading of "showing" is that the court must be persuaded by the defendant's evidence, not simply that there is enough evidence to make out a *prima facie* case.

Thus, we read the rule to contemplate that the trial court will make factual findings about the defendant's showing, which we would review for any evidence to support them. *See generally Pearson*, 358 Or at 109 (explaining that, by analogy, the applicable scope of review for factual findings under ORCP 32 is the one announced in *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968), whereby "an appellate court must defer to the trial court's resolution of any disputed facts, reviewing the record only to determine if no evidence supports the trial court's express and implicit factual findings").

However, that does not tell us whether a determination as to a "showing" under any of the criteria in ORCP 32 I—particularly, the one in dispute here about "the appropriate compensation"—involves the application of a legal standard "that either is satisfied or is not" based on the court's factual findings, in which case we would review for legal error, or whether application of the relevant legal principles to the facts can yield a range of legally permissible choices, in which case we would review for an abuse of discretion. *State v. Iseli*, 366 Or 151, 162, 458 P3d 653 (2020) (describing that difference).

To answer that question, we again look to the text of ORCP 32 I(2) in context to determine what a "showing" as to "the appropriate compensation, correction, or remedy of the alleged wrong" entails.

The adjective "appropriate" means "specially suitable: FIT, PROPER." *Webster's* at 106. When ORCP 32 I was promulgated (then numbered as ORCP 32 J), the same word

appeared frequently throughout ORCP 32, always with regard to determinations that were committed to the discretion of the trial court. *See* ORCP 32 B(2) (1979) ("The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."); ORCP 32 E (1979) ("If the statute of limitations has run or may run against the claim of any class member, the court may require appropriate notice."); ORCP 32 F (1979) ("In the conduct of actions to which this rule applies, the court may make appropriate orders * * *."); ORCP 32 G(2) (1979) ("Prior to the final entry of a judgment against a defendant the court shall request members of the class to submit a statement in a form prescribed by the court requesting affirmative relief which may also, where appropriate, require information regarding the nature of the loss, injury, claim, transactional relationship, or damage."); ORCP 32 H (1979) ("[w]hen appropriate" a class may be brought with regard to particular issues or a class may be divided into subclasses); ORCP 32 M(1)(a) (1979) (determinations about "whether coordination of the actions is appropriate"); ORCP 32 M(2) (1979) (assigned judge determines that "coordination is appropriate"; case assignment that Chief Justice "deems appropriate").

One of the provisions, ORCP 32 M(1)(b) (1979), provided specific parameters for the court to consider in determining when coordination of class actions is "appropriate":

"M(l)(b)  Coordination of class actions sharing a common question of fact or law *is appropriate if* one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice *taking into account* whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and personnel; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and the likelihood of settlement of the actions without further litigation should coordination be denied."

(Emphases added.)

Although none of those other usages of the term "appropriate" in ORCP 32 is a seamless fit with how it is used in ORCP 32 I, they provide some evidence that the Council on Court Procedures understood the term to connote a judgment call on the part of the trial court about what is suitable, fit, or proper, taking into account the facts and applicable legal principles.

The words that follow "appropriate" begin to give more substance to the term. They identify *what* must be suitable, fit, or proper, each describing a means of redress: "Compensation," which is defined as "the act or action of making up, making good, or counterbalancing : rendering equal : AMENDING," "something that constitutes an equivalent or recompense" or "makes up for a loss," or "payment for value received or service rendered," *Webster's* at 463, or "[i]ndemnification; payment of damages; making amends; making whole; giving an equivalent or substitute of equal value; that which is necessary to restore an injured party to his former position," *Black's Law Dictionary* 354 (4th ed 1968); "correction," which means "the action or an instance of correcting: as **a:** *** remedying or removing error or defect : AMENDMENT, RECTIFICATION *** **c:** the action or an instance of making right which was wrong or of bringing into conformity with a standard *** **2a:** something that is or should be substituted in place of what is wrong," *Webster's* at 511; and "remedy," which is "something that corrects or counteracts an evil" or the "legal means to recover a right or to prevent or obtain redress for a wrong : the relief (as damages, restitution, specific performance, an injunction) that may be given by a court for a wrong," *Webster's* at 1920, or the "means by which a right is enforced or the violation of a right is prevented, redressed, or compensated," *Black's* at 1457.

The final phrase of the sentence then identifies what must be made right: "the alleged wrong." A "wrong," as used in the context of a claim or potential legal claim, is "[a] violation of the legal rights of another; an invasion of right to the damage of the parties who suffer it, especially a tort." *Black's* at 1788; *see also Webster's* at 2641 (defining "wrong" as, among other things, "a violation of the legal rights of another" or "an invasion of right to the damage of the party

who suffers it"). And the term "alleged," in this context, means "stated; recited; claimed; asserted; charged." *Black's* at 99. Specifically, given the added context of the notice provision in ORCP 32 H, it means the violation of a legal right of another that was stated in the notice to the potential defendant 30 days before the filing of a damages claim.

Those terms and phrases provide insight into what makes a remedial action "appropriate" under the rule. First, the remedial action must be suited to what has been *alleged* to be wrong—not what the potential defendant, after receiving the notice, might believe to be the actual wrong. That is, the rule's text does not offer a potential class-action defendant the opportunity to litigate liability for the "alleged wrong." Rather, it allows the potential class-action defendant to show that the defendant has provided or will provide an appropriate remedy for the particular wrong that has been alleged. Again, the burden is on the defendant to make a showing about the remedy, not on the plaintiff to make a showing about the merits of the allegation.

Second, nothing in the text suggests that the "appropriate" remedial action can be partial or less than complete compensation, correction, or remedy for the alleged wrong. *See McLaughlin*, 365 Or at 548 (courts will not add terms to the statute that have been omitted). Contextually, ORCP 32 H provides that the prelitigation notice include a "demand that such person *correct or rectify* the alleged wrong"—terms that likewise suggest that the prelitigation cure must set right the alleged wrong, not simply alleviate or limit the harm to class members. (Emphasis added.) *See Webster's* at 1899 (defining "rectify" as "to make or set right" or "REMEDY").

Third, and important for purposes of our standard of review, the text and context reflect that more than one remedy can be "appropriate" for the same alleged wrong. ORCP 32 I addresses whether a claim for *damages* can be maintained for "the alleged wrong." Yet, the rule includes the terms "correction" and "remedy" in ORCP 32 I, signaling that a solution other than damages ("compensation") can also be the appropriate means of redress for that same wrong.

That understanding harmonizes with the reality that ORCP 32 I is a process for resolving damages claims in class-action disputes across many different substantive areas of the law. The substantive law, not a procedural mechanism like ORCP 32, is the place that courts look to determine the nature of the harm and legally permissible or required remedies; there is no reason to believe that the Council on Court Procedures intended the terms "compensation, correction, or remedy" to be untethered from the legally available relief for an alleged wrong under the applicable substantive law. *See generally Sossamon v. Texas*, 563 US 277, 286, 131 S Ct 1651, 179 L Ed 2d 700 (2011) (observing that the phrase "appropriate relief" is "open-ended and ambiguous about what types of relief it includes, as many lower courts have recognized" and that, "[f]ar from clearly identifying money damages, the word 'appropriate' is inherently context dependent"); *see also West v. Gibson*, 527 US 212, 218, 119 S Ct 1906, 1910, 144 L Ed 2d 196 (1999) ("[I]n context the word 'appropriate' most naturally refers to forms of relief that Title VII itself authorizes—at least where that relief is of a kind that agencies typically can provide."). Had the council intended the procedure of ORCP 32 to alter or displace the substantive law of remedies for a particular type of claim, we believe it would have been more explicit about the intention.

Rather, the council presumably understood that Oregon law authorizes many different types of remedies, sometimes overlapping, for violations of different legal violations. For instance, at the time that ORCP 32 was promulgated, Oregon's version of the Uniform Commercial Code (UCC) recognized that contracting parties have choices among different remedies in the event of a breach of contract, including "specific performance" that "may include such terms and conditions as to payment of the price, damages or other relief as the court may deem just." ORS 72.7160(2). And, as it turns out, the legislature used the term "appropriate" to encompass the various remedies available under the UCC. *See* ORS 72.2040(3) ("Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis *for giving an appropriate*

*remedy.*" (Emphasis added.)).[11] Other statutory schemes, like the securities fraud statutes that existed when ORCP 32 was promulgated, set forth very specific damages calculations for a violation.[12] And still other types of legal wrongs are remedied under general common-law principles, such as tort law or negligence, and can involve monetary awards or discretionary equitable remedies when certain legal requirements are met.

Regardless of whether the source of liability is statutory or common law, the process of determining an appropriate remedy in Oregon courts involves similar features: evidence and arguments about the extent of the harm and computation of damages,[13] identification of the applicable legal principles, whether through jury instructions about the correct measure of damages or factors that a court considers when providing discretionary relief,[14] and,

---

[11] *See also* ORS 72.3050; UCC § 2-305, Official Commentary (noting that, "since this Article recognizes remedies such as cover (Section 2-712), resale (Section 2-706) and specific performance (Section 2-716) which go beyond any mere arithmetic as between contract price and market price, there is usually a 'reasonably certain basis for granting an appropriate remedy for breach' so that the contract need not fail for indefiniteness").

[12] *E.g.*, ORS 59.115(2) (providing that the purchaser may recover, (a) "[u]pon tender of the security, the consideration paid for the security, and interest from the date of payment *** less any amount received on the security," or (b), if the purchaser "no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value").

[13] *E.g.*, *Brokenshire v. Rivas and Rivas, Ltd.*, 142 Or App 555, 564, 922 P2d 696 (1996), *rev dismissed as improvidently allowed*, 327 Or 119 (1998) ("Both plaintiff and defendant would have been allowed, but were not required, to present expert testimony to advise the jury about the performance of the appropriate computation and the different assumptions that may be made to guide that computation.").

[14] In fact, one of the places in Oregon law where the term "appropriate" often appears in relation to remedies is when a court is exercising its equitable powers to provide a remedy. *E.g.*, *Oregon State Bar v. Wright*, 280 Or 693, 700, 573 P2d 283 (1977) ("In our opinion, and for these reasons, an injunction by a court of equity is an appropriate remedy when, as in this case, a nonlawyer is engaged in open, persistent, continuous and admitted violation of the statute enacted by the Oregon legislature which prohibits nonlawyers from practicing law."); *Harris v. Barcroft*, 273 Or 804, 806, 543 P2d 656 (1975) ("[The dog] was, therefore, a unique chattel and specific performance would be an appropriate remedy for her recovery if an equitable basis for relief could be established."); *Nelson v. Knight*, 254 Or 370, 372, 460 P2d 355 (1969) (explaining that it is "neither useful nor proper to issue the declaration" where, for example, "a special statutory remedy has been provided, or where another remedy will be more effective

ultimately, an award of damages by the jury or court, or the grant of equitable relief, or both, depending on what justice requires. As the Supreme Court explained in *Evergreen West Business Center, LLC v. Emmert*, 354 Or 790, 800, 323 P3d 250 (2014), after the legislature adopted the Oregon Rules of Civil Procedure in 1979 and dispensed with procedural distinctions between law and equity, "all branches of the law are of equal dignity—the common law, statutory law, and principles of equity. The court does not so much inquire into the question as to the adequacy of a legal remedy as compared with an equitable remedy, as it inquires into the appropriateness of the relief sought." (Internal quotation marks and citation omitted.) *Accord Jensen v. Whitlow*, 334 Or 412, 415, 51 P3d 599 (2002) ("[I]n most cases, a record containing evidence of the nature of the injury sustained by a plaintiff and a jury's assessment of an appropriate damages award is a necessary prerequisite to this court's consideration of an 'as-applied' challenge to a statute such as ORS 30.265(1).").

Viewed against that extensive and varied backdrop of available relief under Oregon law, and the ordinary ways that the extent of harm and just relief are determined in Oregon courts, we conclude that the term "appropriate" in ORCP 32 I is used in a similar sense to how it is used throughout the rest of ORCP 32: to describe a discretionary determination by the trial court that must be informed by a set of legal principles—specifically, those principles found in the substantive law that provide the contours of what types of relief provide justice for the alleged wrong.[15]

As with certification decisions under other provisions of ORCP 32, a trial court's determination under ORCP 32 I may require the court to probe behind the pleadings to evaluate the extent of harm to potential class members for the limited purpose of determining whether the defendant's cure provides a just remedy for the alleged wrong.

---

or appropriate under the circumstances" (internal quotation marks and citation omitted)).

[15] We have reviewed the extensive legislative history supplied by the parties and have not found anything particularly helpful in resolving the issues before us.

But, as with other ORCP 32 determinations about whether the action can be maintained on behalf of a class, nothing indicates that class determinations were intended to have preclusive effect on the underlying merits of the parties' dispute. ORCP 32 I is about whether an action for damages can be maintained as a class action under ORCP 32 A and B.[16]

To summarize our understanding of the operation of the rule: When a trial court is called upon to evaluate a defendant's showing under ORCP 32 I, the court must make a series of determinations. It must consider the pleadings to determine the alleged wrong and the extent of available remedies under the substantive law that applies to that wrong. It must consider the defendant's evidentiary showing about the remedy offered, including resolving any factual disputes in that regard. And then it must determine whether, in light of what the substantive law treats as available and just relief, the defendant's proposed cure is the appropriate compensation, correction, or remedy under the circumstances.

Our standard of review of rulings on ORCP 32 I motions therefore depends on what aspect of the court's determination we are reviewing, just as it does with other determinations under ORCP 32. *See, e.g.*, *Pearson*, 358 Or at 106-08 (explaining that "the trial court has considerable discretion in weighing all of the factors that apply in a given case and determining if a class action will be a superior means of litigating the class claims," but that "the factors to be weighed by the court are legal in nature" and "their application can require, and even pivot on, the resolution of disputed facts"). We review the court's ultimate determination that a proposed cure provides the appropriate compensation, correction, or remedy for an abuse of discretion; however, to the extent that the court's exercise of discretion is predicated on conclusions about what a plaintiff has alleged and the available remedies for the alleged wrong, we review

---

[16] Plaintiffs suggest that factfinding of this nature could infringe on their constitutional right to a jury trial under Article I, section 17, of the Oregon Constitution. We disagree. Plaintiffs still have the right to a jury trial on any individual claims for damages; they simply cannot bring damages claims on behalf of others if Safeway has provided an appropriate cure under ORCP 32 I. Potential class members also retain the right to pursue individual damages claims.

for errors of law; and to the extent that the ruling is predi-
cated on factual findings about a defendant's showing as to
the proposed cure, we review for any evidence in the record
to support them.

  2.  *Safeway's cure*

      With that understanding, we turn to the merits of
the parties' dispute regarding the dismissal of plaintiffs'
damages action. As described earlier, the court granted the
motion after determining that (1) Safeway's methodology for
determining ascertainable loss was correct; (2) Safeway's
exhibits reflected the correct "regular prices" for employing
that methodology; and (3) statutory damages did not need to
be included in order for the proposed cure to satisfy ORCP
32 I.

      We resolve this appeal by focusing on the court's
third determination: that statutory damages could be omit-
ted from the appropriate cure under ORCP 32 I. We con-
clude that the court's exercise of discretion with regard to
that issue was contrary to the legal principles governing
available remedies for the alleged wrong.

      As discussed earlier, a trial court's exercise of dis-
cretion under ORCP 32 I is cabined by the substantive law
that applies to the alleged wrong. Here, the "alleged wrong"
was the violation of provisions of the UTPA, ORS 646.608
(1)(j), which makes it an unlawful practice to make "false
or misleading representations of fact concerning the rea-
sons for, existence of, or amounts of price reductions," ORS
646.608(1)(s), which makes it an unlawful trade practice to
make "false or misleading representations of fact concern-
ing the offering price of, or the person's cost for real estate,
goods or services," and ORS 646.608(1)(u), which makes it
an unlawful trade practice to engage "in any other unfair or
deceptive conduct in trade or commerce." Plaintiffs alleged
their UTPA claims in two alternative counts based on the
BOGO scheme: The first alleged that the scheme was a
"willful" violation of the UTPA; the second alleged that it
was a knowing or reckless violation of the UTPA.

      The UTPA includes a provision that specifically
addresses the filing of private actions and the measure of

damages for UTPA violations. ORS 646.638 provides, in relevant part:

> "(1)   Except as provided in subsections (8) and (9) of this section, a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, *may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater.* The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper.
>
> "* * * * *
>
> "(8)   A class action may be maintained under this section. In any class action under this section:
>
> "(a)   Statutory damages under subsection (1) of this section may be recovered on behalf of class members *only if the plaintiffs in the action establish that the members have sustained an ascertainable loss of money or property as a result of a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608*;
>
> "(b)   The trier of fact may award punitive damages; and
>
> "(c)   The court may award appropriate equitable relief."

(Emphases added.)

        The statute's legislative history explains why class actions are subject to a different, heightened standard for recovery of statutory damages. ORS 646.638(8) was enacted in 2009 as part of House Bill (HB) 2585, an effort to bring Oregon's consumer protection laws in line with the rest of the country. Audio Recording, House Committee on Judiciary, HB 2585, Mar 11, 2009, at 1:31:00 (statement of Robert Stoll explaining that Oregon was one of three states to preclude class action lawsuits for statutory damages), https:// olis.oregonlegislature.gov (accessed Dec 18, 2020). Before the 2009 amendments, ORCP 32 included an explicit prohibition on the recovery of statutory damages in class actions, including for claims based on violations of the UTPA; it

provided that "[a] class action may not be maintained for the recovery of *statutory minimum penalties for any class member as provided in ORS 646.638* or 15 USC [section] 1640(a) or any other similar statute." *Former* ORCP 32 K (2008), *repealed by* Or Laws 2009, ch 552, § 1 (emphasis added).

As initially drafted, HB 2585 would have eliminated ORCP 32 K. However, an opponent of the legislation, Paul Cosgrove, argued on behalf of the Oregon Financial Services Association that the bill would expose businesses to statutory damages for technical mistakes, because of the way that the Supreme Court had interpreted the requirement of a "willful" violation for purposes of the UTPA. Specifically, the court had interpreted "willful" to encompass mere negligence. Audio Recording, House Committee on Judiciary, HB 2585, Mar 11, 2009, at 1:38:00 (statement of Paul Cosgrove, Oregon Financial Services Association, describing technical violations that would constitute "willful" violations under Oregon law even though they did not rise to the level of a "truly bad actor"), https://olis.oregonlegislature.gov (accessed Dec 18, 2020); *see State ex rel Redden v. Discount Fabrics*, 289 Or 375, 385, 615 P2d 1039 (1980) (holding that, under the terms of the UTPA, "a defendant is liable for misrepresentations made negligently, without evidence that it was attended by either conscious ignorance or reckless indifference to its truth or falsity" and that the term willful as defined in the UTPA "requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by him was not true").

One of the legislators then asked whether that was really a problem or whether a trial court could simply decide not to allow the $200 penalty for a less egregious violation of the UTPA. Cosgrove's response—which was consistent with the statutory text in ORS 646.638(1)—was that the statutory penalty was not discretionary; rather, the statute required an award of actual damages or the statutory penalty, *whichever was greater*. Audio Recording, House Committee on Judiciary, HB 2585, Mar 11, 2009, at 1:39:45 (statement of Paul Cosgrove), https://olis.oregonlegislature.gov (accessed Dec 18, 2020); *see Crooks v. Payless Drug Stores*, 285 Or 481,

490, 592 P2d 196 (1979) ("[W]e now interpret ORS 646.638 to provide that a violation by the defendant *entitles the plaintiff to recover compensatory damages or $200, whichever is greater*; the jury can also award punitive damages if it finds deterrence is called for and the defendant's conduct is particularly aggravated." (Emphasis added.))

The public hearing on HB 2585 closed with the understanding that then-Representative (now Oregon Supreme Court Justice) Chris Garrett would work on a revision of the legislation to account for the concerns that defendants would be subjected to class-wide statutory penalties for conduct that was negligent. The result was an amendment that added what became ORS 646.638(8)(a) and provides for the recovery of statutory damages "only if the plaintiffs in the action establish that the members have sustained an ascertainable loss of money or property as a result of a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608." In carrying the bill on the floor of the House, Representative Garrett explained that the bill was necessary to ensure that wrongdoers did not keep ill-gotten gains, because those actors were otherwise unlikely to be held accountable for small dollar, widespread harms. He also pointed out that the bill had "increas[ed] the burden of proof" for the recovery of statutory damages by class members. House Floor Debate, HB 2585, May 4, 2009, at 1:12:00, https://olis.oregonlegislature.gov (accessed Dec 18, 2020).

That history confirms what is evident from the text of ORS 646.638(8)(a): After its enactment in 2009, the recovery of statutory damages for a knowing or reckless violation of the UTPA is not a discretionary award. If the representative plaintiff proves that type of violation, class members are entitled to the *greater of* actual damages or $200. The legislature viewed that type of wrong—which is akin to the tort of deceit rather than negligence—to be one that must be corrected with statutory damages on a class-wide basis, just as "willful" violations are compensated with statutory damages on an individual basis. *See Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or 127, 135 & n 5, 690 P2d 488 (1984) (explaining that "[t]he evident purpose [ORS 646.638] is to

encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit").

Thus, ORS 646.638 reflects a legislative judgment about the minimum compensation that is appropriate for a knowing or reckless violation of the UTPA for class members: It must include a $200 statutory penalty to adequately compensate for and deter the harm in small dollar cases.

Safeway's cure, and the trial court's ruling, did not sufficiently account for that legislative judgment. Whereas plaintiffs alleged a knowing or reckless violation of the UTPA in addition to a "willful" one, Safeway's cure was based solely on the count alleging the lesser wrong: a "willful" violation, which, as noted, has been interpreted for UTPA purposes to mean negligence. ORCP 32 I was not the process by which Safeway could dispute whether its violation was knowing or reckless or put plaintiffs to their proof on that issue; it was merely a process whereby Safeway could remedy "the alleged wrong." Said another way, where, as here, a class-action complaint alleges a claim for which the legislature has mandated a particular remedy, to avail itself of ORCP 32 I, a defendant's proffered cure for that alleged wrong must include that legislatively mandated remedy.

Because Safeway's cure omitted the statutory damages the legislature has deemed necessary to compensate for a knowing or reckless violation of the UTPA, it was not within the range of appropriate remedies for that alleged wrong, and the trial court abused its discretion in concluding otherwise. The trial court therefore erred in granting the motion to dismiss, and we reverse and remand the limited judgment.[17]

---

[17] We do not express an opinion on the parties' competing theories of ascertainable loss with regard to potential class members whose cost to purchase was equal to or less than the price of the same quantity of allegedly comparable non-BOGO meat. After the trial court's decision, this court issued *Scharfstein v. BP West Coast Products, LLC*, 292 Or App 69, 89, 423 P3d 757, *rev den*, 363 Or 815 (2018), *cert dismissed*, ___ US ___, 140 S Ct 16 (2019), which held that, "[i]n an illegal charge case such as this one, whether a customer relied on the non-disclosure of a fee does not matter; what matters is whether the fee is disclosed in the particular way that the law requires. The UTPA prohibits businesses from charging customers other types of fees when they are not disclosed in the particular way that the law requires." On remand, the parties will have an opportunity to litigate certification questions in light of *Scharfstein*, including questions of ascertainable loss where the violation involves a pricing misrepresentation.

### III.    CONCLUSION

In conclusion, the trial court followed the correct procedure in this case: It considered the pleadings, took evidence on the nature and extent of the harm and Safeway's proposed cure, then made the determinations under ORCP 32 I. However, because class members are legally entitled to statutory damages for knowing or reckless violations of the UTPA, the trial court erred in concluding that Safeway's cure was "appropriate" notwithstanding the absence of those damages.

Reversed and remanded.